UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUDY MURRAY,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | No. 2:12-cv-3122-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

　　　　BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 18.) Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment.

## JURISDICTION

　　　　Plaintiff Judy Murray (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on May 15, 2008. (Tr. 199, 213.) Plaintiff alleged an onset date of June 14, 2007. (Tr. 199, 213.) Benefits were denied initially and on reconsideration. (Tr. 79, 84, 86.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Marie Palachuk on February 23, 2011. (Tr. 37-70.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 50-51, 56-62.) Vocational expert Jinnie Lawson and medical experts Charles Wiseman, M.D., and Kent Layton, Ph.D., also testified. (Tr. 39-56, 62-69.) The ALJ denied benefits (Tr. 12-24) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

　　　　The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born in 1965 and was 46 years old at the time of the hearing. (Tr. 60.) She has a high school education and 10 college credits. (Tr. 64.) She has work experience as a cashier at a convenience store. (Tr. 63.) She worked in special education with children with severe behavior disorders for a long time. (Tr. 56, 60, 63.) She left that job because it became really difficult and she missed work. (Tr. 56.) She would go to work in tears and come home in tears. (Tr. 56.) When she left her job, the tears, crying and depression did not go away. (Tr. 56.) She testified she does not handle stress well. (Tr. 57.) She gets flustered and cries. (Tr. 57.) She does not want people looking at her, noticing her, or talking to her. (Tr. 57.) She has trouble sleeping. (Tr. 57.) On her worst days, she does not go anywhere, does not do any housework, does not answer the telephone and even her dog agitates her. (Tr. 58.) She estimates she has five to six bad days per month. (Tr. 58.) She does not see her family or talk to them. (Tr. 58.) She has a few friends but had not seen them in a year at the time of the hearing. (Tr. 58.) She testified that she used alcohol heavily at points, but since 2007 she has relapsed once or twice a year for a few days at a time. (Tr. 50.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision

of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or

combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

However, a finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). If drug or alcohol addiction is a

material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since June 14, 2007, the alleged onset date. (Tr. 14.) At step two, the ALJ found plaintiff has the following severe impairments: chronic alcohol abuse, depression and anxiety. (Tr. 15.) At step three, the ALJ found plaintiff's impairments, including the substance use disorder, meet sections 12.04, 12.06 and 12.09 of 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 15.) However, because there is evidence of substance abuse, the ALJ then considered the plaintiff's limitations without the effects of substance use. The ALJ found if plaintiff stopped the substance use, plaintiff would continue to have a severe impairment or combination of impairments, but no impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 18.) The ALJ then determined:

> If the claimant stopped the substance use, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. Claimant needs to avoid concentrated exposure to respiratory irritants. She is able to understand, remember and carry out simple and complex instructions/tasks. She should only have occasional contact with the public and co-workers to avoid distractions and it is best if she is in an essentially isolated environment with only occasional supervision to avoid distress from criticism. Attention and concentration would wax and wane but she would be able to sustain it at a low average level for two hour increments. She needs a low stress job (defined as requiring few exercises of judgment/decisions and a non-chaotic setting).

(Tr. 20). At step four, if plaintiff stopped the substance use, the ALJ found plaintiff would be unable to perform past relevant work. (Tr. 22.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, and if plaintiff stopped the substance use, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff could perform. (Tr. 22-23.) Because plaintiff would not be disabled if she stopped the substance use, the ALJ found plaintiff's substance use disorder is a contributing factor material to the determination of disability. (Tr. 23.) Thus, the ALJ concluded

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

plaintiff has not been under a disability as defined in the Social Security Act at any time from the alleged onset date through the date of the decision. (Tr. 23.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) improperly rejecting the opinions of examining therapists; (2) improperly rejecting plaintiff's testimony; (3) determining plaintiff would not be disabled if she stopped substance use; and (4) failing to meet the step five burden to identify jobs available in significant numbers consistent with plaintiff's limitations. (ECF No. 17 at 10-20.) Defendant argues the ALJ: (1) properly concluded plaintiff's substance abuse was a contributing factor material to the finding of disability; (2) properly evaluated the medical evidence; (3) properly found plaintiff's allegations regarding her limitations not totally credible; and (4) made step five findings supported by substantial evidence (ECF No. 18 at 9-20.)

**DISCUSSION**

**1.      Credibility**

Plaintiff argues the ALJ erred by failing to provide legally sufficient reason for rejecting plaintiff's testimony. (ECF No. 17 at 15-16.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3)

claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements are not credible to the extent they are inconsistent with the RFC finding. (Tr. 21.) The ALJ gave several reasons for rejecting plaintiff's statements: (1) plaintiff's symptoms improve with medication and sobriety; (2) noncompliance with recommended treatment; and (3) inconsistencies in reported alcohol use. (Tr. 21.) Plaintiff argues the ALJ rejected plaintiff's testimony primarily because she terminated her treatment program and otherwise failed to provide valid reasons for rejecting plaintiff's testimony. (ECF No. 17 at 15-16.) Defendant argues the ALJ gave clear and convincing reasons to discredit plaintiff's claims. (ECF No. 18 at 16-18.)

The first two reasons cited by the ALJ in rejecting plaintiff's testimony are that plaintiff's symptoms are controlled by medication and reduced by sobriety and plaintiff was noncompliant with medication and recommended treatment. (Tr. 21.) An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, it is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 -1114 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair v. Bowen*, 885 F.2d 597, 603 -604 (9th Cir. 1989). In October 2008, after 13 months of reported abstinence, plaintiff's symptoms were not as severe as when she was abusing alcohol. (Tr. 21,

288, 290.) She admitted she does well on medication when she takes it. (Tr. 21, 290.) In December 2009, plaintiff was admitted to an outpatient program for substance abuse but withdrew against clinical advice. (Tr. 21, 380.) She continued to use substances while in the program. (Tr. 380, 382.) The ALJ pointed out that in February 2010, plaintiff complained her symptoms were worsening. (Tr. 21, 348.) However, plaintiff also admitted she had not taken her medication for the previous six months and the record reflects she was using alcohol around that time. (Tr. 21, 348, 380, 382.) The ALJ's conclusion that plaintiff does better when undergoing treatment but was noncompliant is supported by the record. As a result, these are clear and convincing reasons supported by substantial evidence which support the negative credibility finding.[1]

The third reason given by the ALJ in finding plaintiff not credible involves inconsistencies in plaintiff's reporting regarding her use of alcohol. (Tr. 21.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals. S.S.R. 96-7p. Further, conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Plaintiff testified she relapses only once or twice per year for a few days at a time (Tr. 50-51), yet her medical records and substance abuse records suggest more frequent use. (Tr. 21, 268 (2/22/09), 323 (2/13/09), 387 (12/31/08), 391 (5/6/08).) Plaintiff continued to use alcohol while in outpatient treatment from December 2009 to April 2010. (Tr. 21, 380, 382.) In

---

[1] Plaintiff argues "one instance of leaving early from a treatment program cannot be considered a clear and convincing reason for rejecting her entire testimony." (ECF No. 19 at 7.) As discussed herein, the ALJ relied on more than plaintiff's noncompliance with alcohol treatment in considering plaintiff's credibility. Plaintiff also argues for the first time in her Reply Memorandum that S.S.R. 82-59 indicates the ALJ improperly raised the issue of noncompliance. (ECF No. 19 at 7-9.) Case law indicates the mandates of S.S.R. 82-59 only apply to claimants who would otherwise be disabled within the meaning of the Social Security Act. *Molina v. Astrue*, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012); *Roberts v. Shalala*, 66 F.3d 179, 183 9th Cir. 1995.) In this case, the ALJ determined plaintiff is not disabled, so S.S.R. 82-59 does not apply. *Molina* is on point because, as in the present case, plaintiff's failure to seek treatment was merely a factor in the credibility determination to the extent it was considered. *See Molina*, 674 F.3d at 1114 n.6. Because noncompliance with treatment was not the sole reason for rejecting plaintiff's claim, the ALJ did not err by failing to comply with the provisions of S.S.R. 82-59.

September 2010, plaintiff reported to an emergency room physician that she had three drinks that day and she consumes alcohol daily. (Tr. 15, 494.) The ALJ reasonably considered inconsistencies between plaintiff's testimony about limited relapses and evidence suggesting more frequent alcohol use in assessing plaintiff's credibility. This is a clear and convincing reason supported by substantial evidence which undermines plaintiff's credibility. Thus, there is no error in the credibility finding.

**2.    Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the opinions of four examining therapists. (ECF No. 17 at 12-14.) In disability proceedings, the opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

The record contains the October 30, 2008 psychological assessment of examining psychologist, Dr. Toews (Tr. 288-99), and four DSHS Psychological/Psychiatric Evaluation forms completed by Joy Stochosky, therapist in training, dated October 18, 2007 (Tr. 276-81); Tracy Molina, MSW, CDP, dated April 17, 2008 (Tr. 270-75); Chris Clark, M.Ed., LMHC, dated April 16, 2009 (Tr. 371-76); and Russell Anderson, LICSW, dated November 22, 2010 (Tr. 498-504).

Dr. Toews diagnosed alcohol dependence in sustained full remission and adjustment disorder with anxiety and depressed mood due to occupational stressors and probable professional burn-out. (Tr. 292.) He opined plaintiff is able to sustain attention and concentration and remember complex instructions. (Tr. 292.) Dr. Toews indicated plaintiff is able to relate to and interact with others and tolerate supervision, but her ability to deal with high levels of stress is compromised. (Tr. 292.) He opined plaintiff "should have no difficulty functioning in a wide

range of low stress jobs." (Tr. 292.) The ALJ gave Dr. Toews' opinion substantial weight. (Tr. 21.)

The therapists diagnosed various combinations of a several mental health disorders including: PTSD, major depressive disorder, and alcohol dependence (Stochosky) (Tr. 277); major depressive disorder, alcohol dependence in remission, and cognitive disorder NOS (Molina) (Tr. 271); and bipolar disorder NOS, PTSD, and alcohol dependence in sustained remission (Clark and Anderson) (Tr. 372, 499). Ms. Stochosky assessed six moderate, three marked, and one severe limitations (Tr. 278); Ms. Molina assessed six moderate, one marked, and three severe limitations (Tr. 272); Mr. Clark assessed four moderate and five marked limitations (Tr. 373); and Mr. Anderson assessed four moderate and one marked limitations. (Tr. 500.) The ALJ gave little weight to the DSHS form opinions of the four therapists. (Tr. 21.)

Plaintiff first argues the ALJ improperly rejected the therapist opinions "wholesale without a specific discussion of each assessment." (ECF No. 17 at 13, ECF No. 19 at 5.) If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) The regulations require consideration of other source opinions, *see* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness, *see id.*; *see also* SSR 06–03p (recognizing "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"). *Molina* at *id.* Thus, if the ALJ's reasons are germane to each therapist opinion and supported by substantial evidence, the ALJ did not err.

The first reason mentioned by the ALJ in rejecting the therapist opinions is none of the opinions are from an "acceptable medical source." (Tr. 21.) While the opinion of an acceptable medical source such as a physician or psychologist is entitled to more weight than the opinion of an "other source," such weighting does not mean the opinion of an "other source" is entitled to no weight. Disregard of other source opinions violates the Secretary's regulation directing consideration of observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2). Thus, the ALJ erred by rejecting the opinions of the therapists on basis of their credentials. However, because the ALJ gave other germane reasons for rejecting the therapist opinions, this error is harmless. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1163 (9th Cir. 2008).

The second reason cited by the ALJ in rejecting the therapist opinions is the opinions were rendered on a check-box form and do not contain significant explanation of the basis for conclusions. Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Opinions on a check-box form or form reports which do not contain significant explanation of the basis for the conclusions may accorded little or no weight. *See Crane* at 253; *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir. 1996). Each therapist made some notes on the DSHS form and attached a check-box "Adult Mental Status Summary" form. Plaintiff argues these notes "contain adequate bases and explanations for their conclusions." (ECF No. 17 at 14.) However, Ms. Stochosky's explanation of the assessed limitations is a primarily a list of symptoms. (Tr. 278.) Ms. Molina's explanation of the assessed limitations is contained in four sentences, two of which indicate they are based on plaintiff's report (see discussion *supra*). (Tr. 272.) Mr. Clark explained the limitations assessed in three sentences, one of which was plaintiff's statement that she does not trust her own judgment. (Tr. 373.) Mr. Clark also co-signed an initial assessment for treatment which lists plaintiff's reported social and mental health history. (Tr. 336.) Mr. Anderson's notes are primarily a list of symptoms. (Tr. 499-500.) The therapist notes are limited and are reasonably construed as insufficient explanations for the significant limitations assessed by each therapist. By contrast, Dr. Toews' findings are explained over four pages of narrative and are supported by plaintiff's reports, a review of records, objective testing, and professional analysis. (Tr. 288-93.) The ALJ's rejection of the four therapist check-box forms with minimal explanations for the conclusions and findings contained therein was reasonable and germane to each opinion.

The third and fourth reasons mentioned by the ALJ in rejecting the therapist opinions is they are based primarily on the plaintiff's self-report and other than mental status exams, the therapists did not perform any clinical testing. (Tr. 22.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. Other relevant factors are the amount of relevant evidence supporting the opinion and the quality of the explanation provided in the opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Because the ALJ's credibility finding was properly supported, it is reasonable for the ALJ to reject opinions

based primarily upon plaintiff's self-report. Furthermore, the ALJ pointed out that each therapist assessed cognitive limitations without doing testing to determine cognitive functioning. (Tr. 22.) While plaintiff observes there is an element of self-report required in all psychological treatment and assessment (ECF No. 17 at 14), when faced with conflicting assessments the ALJ may reasonably reject the opinions based primarily on the self-report of a claimant who has been determined to be less than fully credible. Further, though Dr. Toews also considered plaintiff's self-report, other factors such as records review, objective test results and professional expertise support his conclusions. As a result, the ALJ reasonably gave substantially more weight to Dr. Toews opinion than to the opinions of the examining therapists. Based on the foregoing, the ALJ's determination that the therapist opinions are based primarily on unreliable self-report with no supporting clinical testing is germane to each opinion. The ALJ cited germane reasons supported by substantial evidence for rejecting the four therapist opinions and did not err.

**3.     Effects of Substance Use**

Plaintiff argues the ALJ improperly determined plaintiff would not be disabled if she stopped her substance use. (ECF No. 17 at 16-18.) At step three, the ALJ found plaintiff's impairments, including the substance use disorder, meet sections the listings for affective disorders (12.04), anxiety related disorders (12.06) and substance addiction disorders (12.09). 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 15.) Thus, plaintiff is presumptively disabled. However, a finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to the disability determination. *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

The ALJ found that if plaintiff stopped the substance use, there would be jobs available in the national economy consistent with plaintiff's residual functional capacity. (Tr. 20-23.) As a result, the ALJ concluded plaintiff would not be disabled if she stopped the substance use and therefore the substance use disorder is a contributing factor material to the determination of disability. (Tr. 23.) It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

Plaintiff first argues the evidence in the record does not show which limitations would exist if the alcohol use was stopped. (ECF No. 17 at 17.) As authority, plaintiff cites an out-of-circuit opinion and an SSA teletype, neither of which are binding on this court. Notwithstanding, plaintiff's assertion is not supported by any evidence in the record. The medical expert, Dr. Layton, testified plaintiff experiences "marked symptoms when she's using alcohol," and "moderate symptoms when she's off alcohol, moderate or less." (Tr. 46.) Dr. Layton testified when plaintiff is off alcohol, plaintiff would have a moderate limitation in accepting criticism from supervisors and a moderate limitation in the ability to respond to changes in the work setting. (Tr. 48.) The ALJ gave weight to Dr. Layton's testimony and included limitations in the RFC consistent with the two functional limitations identified by Dr. Layton. (Tr. 18, 20.) Thus, the evidence supports the ALJ's conclusion that plaintiff's limitations with and without alcohol can be separated.

Plaintiff further asserts "the Commissioner makes contradicting statements regarding Ms. Murray's alcohol use. First, she alleges it was chronic and continuous . . . [then] admits there was 13 months period of sobriety and that this period provided the best evidence of her limitations." (ECF No. 19 at 2.) It was not the Commissioner that created the contradiction, it was plaintiff's own statements to medical providers and the evidence in the record that created an ambiguity regarding plaintiff's alcohol use. Plaintiff's treating physician documented "chronic and continuous" alcoholism. (Tr. 268, 323, 387, 391.) However, plaintiff told Dr. Toews she had been sober from alcohol 13 months in October 2008.[2] (Tr. 288.) This contradiction in the evidence was created by plaintiff's contradictory reports, not the ALJ or the Commissioner, and is evidence the ALJ reasonably considered in finding plaintiff not credible. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v.*

---

[2] This is not a "period of sobriety argued by the ALJ and the Commissioner" (ECF No. 19 at 3), it is evidence in the record of plaintiff's statement to Dr. Toews.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

*Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). As a result, the ALJ reasonably relied on Dr. Toews' opinion as the "best indication of her abilities without alcohol" (Tr. 19) because Dr. Toews took into account findings in addition to plaintiff's own statements as the basis for the limitations assessed.[3] Additionally, most of the evidence cited by plaintiff as suggestive of alcohol use during this period was appropriately rejected by the ALJ, as discussed *supra*, in part because the findings were based primarily on plaintiff's unreliable self-report. (ECF No. 19 at 3-4, citing Tr. 271-72, 274-75, 277-80.)

      Plaintiff also argues that Dr. Layton actually testified that plaintiff would have moderate limitations in additional areas of functioning which the vocational expert testified are incompatible with sustained employment in the competitive labor market. (ECF No. 17 at 18.) Dr. Layton testified that if plaintiff's use of alcohol was a couple of days, twice a year, his opinion about plaintiff's functional limitations without alcohol would change. (Tr. 51-52, 53.) The testimony is somewhat convoluted and references numbers on a form not in the record (Tr. 55), but Dr. Layton apparently testified to additional moderate limitations without the effects of alcohol based on the assumption that plaintiff's alcohol relapse was a couple of days, twice a year. (Tr. 67-68.) This assumption is based on plaintiff's testimony that since 2007 she "relapsed once, possibly twice each year" for a few days at a time. (Tr. 50.) She also testified she had gone 6 months without alcohol several times. (Tr. 51.) However, this testimony was rejected by the ALJ based in part on inconsistencies in plaintiff's reporting about her alcohol use to various medical providers, discussed *supra*. (Tr. 21.) The ALJ's credibility finding was properly supported by clear and convincing reasons and substantial evidence, so this testimony was reasonably rejected by the ALJ. Since Dr. Layton's testimony regarding additional limitations without the effects of alcohol was based on an assumption the ALJ determined is not reliable, the additional limitations identified by Dr. Layton are not relevant and the ALJ was not required to reject them. Instead, the ALJ reasonably relied on Dr. Layton's earlier testimony identifying two moderate limitations if plaintiff stopped the alcohol use: a moderate limitation on accepting criticism from supervisors and a moderate limitation in the ability to respond to changes in the work setting. Because the limitations identified by the ALJ in the RFC without the effects of

---

[3] Dr. Layton testified that Dr. Toews could evaluate plaintiff's mood if she had been off alcohol for six months. (Tr. 49.) The latest evidence cited by plaintiff is from April 17, 2008, just over 6 months before Dr. Toews' October 30, 2008 evaluation. (ECF No. 19 at 3-4.)

alcohol use are supported by substantial evidence and are not disabling, the ALJ properly determined plaintiff's substance use disorder is a factor material to the determination of disability.

**4.    Step Five**

Plaintiff argues the ALJ's step five finding was without evidentiary value because it was based on an incomplete hypothetical. (ECF No. 17 at 19-20.) If the hypothetical does not reflect all the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991); *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir.1988); *Gallant v. Heckler*, 753 F.2d 1450, 1457 (9th Cir. 1984). However, plaintiff's arguments about an incomplete hypothetical are restatements of the arguments addressed and rejected throughout this decision. As a result, the hypothetical to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. Therefore, the ALJ did not err at step five.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment **(ECF No. 18)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED March 25, 2014

*s/ Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge